Good morning, your honors. My name is Carl Shapiro, and I am representing the appellants in this case, American Red Cross and Richard Scheer. We hope that in our briefs we have illustrated why the decision in the trial court, in the district court, violates at least ten different fundamental precepts of California insurance law. And a number of those precepts have been recognized by previous decisions of this court, most particularly the Pershing Park case, which we cited in our reply brief. That's a case which, in fact, not only recognized those precepts, but recognized the automatic liability rule, as St. Paul characterizes it, that happens when an insurer rejects a proper defense of his insured. Today, however, let me ask you a question. Let me tell you what I'm struggling with. The original insured here, the name insured, is the tournament. And then by endorsement, Kraft becomes a name insured. The original insured is the Ladies Professional Golf Association. That's the name insured. They purchased the policy. Right. And then... They purchased the policy to protect against accidents that take place in their tournaments. Right. Then there's an endorsement issue that makes Kraft a name insured. Yes, there is. It was supposed to endorse a... to run the tournament. It never did that. Okay. So Kraft is a name insured. And I understand under the policy that if Kraft were to be held vicariously liable for any action of volunteers, that Kraft, as the insured, would be entitled to indemnity. Correct, Your Honor. I don't quite understand what contractual right Red Cross has. They are not a name insured. They didn't pay the premium. I don't know where they... Are they a third-party beneficiary of the policy? No, they are not claiming a right under the policy, Your Honor. They're claiming a right to recoup the defense costs they paid on behalf of an insured under the policy, Richard Scher. Red Cross paid Mr. Scher's defense costs when St. Paul refused to do so. And they were also seeking reimbursement of the amount they paid. The amount that they owe any duty to this third-party who is not an insured, didn't pay the premium? Why do they owe any duty to this stranger to the policy? Well, for a couple of reasons, Your Honor. One is that the Red Cross is subrogated to Mr. Scher's rights under the policy, and it can assert those rights to the policy, even in the absence of an assignment, even if it was also an assignment. Granted, why does Mr. Scher have any... Why does St. Paul owe any duty to indemnify Mr. Scher? He's not a policyholder. He didn't pay the premium. He's a... He's a protected person, as the policy talks about it. He is an insured under the policy. The policy protects not only the sponsors, the commercial sponsors of the tournaments, but anybody who works for the commercial sponsors, whether they're paid or not paid. When I read the policy, it looked to me like the policy was saying that if Scher or some other volunteer causes injury to somebody that results in liability to Kraft, Kraft is covered for what the volunteers do. I didn't see where Scher is owed a duty by the insurance company. In the policy itself, Your Honor, the policy defines as protected persons both employees and volunteer workers for the sponsor. And Mr. Scher was a volunteer worker for the sponsor. There's no dispute about that. He was a volunteer worker for the sponsor here. And the policy doesn't just protect the sponsor. It protects anybody who's working for the sponsor. And that includes Mr. Scher here. Can I go off a slight tangent from what Judge Silverman was inquiring about? Under normal surety ship law, it would be most unusual for the Red Cross to be able to pay Mr. Scher and expect payment, in this case from, in quotes, the guarantor, if you will, the insurance company without the insurance company's consent. Because in effect, by paying him, it sort of ends any dispute with Scher, whether he was contributorily negligent or whatever else it might be. So my question to you is, what right, either under surety ship law, which is not technically what we're dealing with here, but it's outside the insurance context, or under the insurance policy, did the Red Cross have the right to settle, if you will, with Mr. Scher without the consent of the insurance company? You're referring to the settlement with Ms. Palmer, you mean, Judge Smith? Maybe I've got the wrong name. I thought the gentleman who was injured was, oh, that's right. He's the one that caused the damage, is Ms. Palmer. Excuse me. Let's review what happened. Richard Scher was driving the cart. He was the one driving the cart. Right. And the payment was made to Palmer then, right? Correct. Okay. So the Red Cross settled with Palmer. Correct. Correct. And so let me change the names then. Okay. By what right did the Red Cross settle with Ms. Palmer and pay her, what was it, $750,000 or something like that, without the consent of the insurance company, if it was looking to the insurance company to reimburse it? Good question. But the answer to that is that before the settlement was issued, was made, the defense and indemnity of the case was tendered to St. Paul. St. Paul denied both defense and indemnity. Once an insurer, under insurance law, denies a defense, the insured person here, and Mr. Scher was an insured person in this policy, the insured person is then, under California law, free to go ahead and make the most reasonable settlement the insured person can make with, and you're asking why the Red Cross can do that. The Red Cross took responsibility for Mr. Scher, as he was their agent as well. He was an agent of both. I understand. But you're asking the insurance company to pay for it. What insurance law in California are you relying upon for the proposition you just gave? Well, it's the same insurance law that was recognized by the Pershing Park case in this to start with Gray v. Zurich, go through Isaacson and Hamilton, and a series of court of appeal cases including Prune. All those cases recognize that when an insurer abandons an insured, that insured doesn't have to go through and defend itself or himself in the trial. That insured can affect the most reasonable settlement that the insured can affect, and then the reasonable settlement, as long as there's no collusion involved in it, and as long as there's no exclusion in the policy that would bring the accident outside of coverage. Was the insurance company notified as a courtesy what the settlement terms were? Absolutely, Your Honor. In this case, it was a mediation. It was a mediation requested by the court. There was no disagreement at the mediation that $750 was the right amount to be paid to Ms. Palmer. There was a disagreement about who was going to pay what. And when the three parties couldn't get together, the Red Cross finally said, okay, we'll pay her and then we'll figure out afterwards. And was the insurance company, by chance, at the mediation just as an observer, or were they there? They were representing Kraft at the time. Okay, so they were representing Kraft. So the insurance company clearly was involved with this. And the insurance company has not disputed the reasonableness of the payment. Okay. That's stipulated. The settlement was a reasonable amount. So the question here is, what liability does the insurance company have when it failed to defend Richard Scherr? Right. Now, under California law, that liability is, as the Ninth Circuit has described it, as St. Paul derisively describes it, it's automatic. If you fail to defend, then you don't force and you can't force the insured to then go ahead and prove the facts in the case in order to get the benefit of that rule. Most often, the insured is denying the facts in the case. And that would place, as the California Supreme Court said, that would place an impossible burden on the insured to prove the plaintiff's case against him in order to recover the judgment. So all those, the coverage is presumed. And as long as the settlement or judgment is based upon a claim that was subject to coverage for which there was a possibility of coverage, the insurance company is liable for it. If there were damages awarded on a claim that had no possibility of coverage, no, they wouldn't be responsible for that. Can I shift you to a different subject? A protected person, under the terms of the policy, is covered insofar as the volunteer works for, and I'm quoting, at the direction of the insured. Yes. In this case, the insured was Kraft, right? The name is correct. Right. Now, what direction did Kraft give to Mr. Scherer? Kraft never talked to Mr. Scherer personally. Kraft dealt with the Red Cross, and Kraft asked the Red Cross, this is all stipulated, Kraft asked the Red Cross to supply volunteer workers to staff the first aid tent at the tournament, and to have, and they told the Red Cross where they wanted the workers to set up the tent. And they asked the Red Cross to go out and solicit those volunteers. And Mr. Scherer answered that call, and he arrived at the tournament ready to go out to the tent, and that's why he was there. He was a volunteer worker. But when he went out to get whatever he was getting in the golf cart, no one from Kraft told him to go do that, did they? Absolutely not. And I presume that later on, if he had been at the tent and asked to go to the bathroom, no one from Kraft would have told him to go to the bathroom either. He wouldn't have had to ask for that kind of permission from the sponsor. So had he been injured going to the bathroom at his own volition, you would contend that he was likewise covered? Absolutely. He's within the course and scope of his employment as a volunteer worker at the tournament. He's within the course and scope of his duties. He's on the premises. There are a lot of cases about that. But not working for Kraft? He is working for Kraft. He's an employee on the premises, Your Honor. How do you say he was a volunteer? An unpaid. Right. You're right. He's an unpaid volunteer for Kraft, working for Kraft for the tournament. That's the factual issue that Ms. Palmer alleged in the underlying action. She alleged that he was working at the time of the accident as either a volunteer or an employee under the course and scope of his duties for Kraft. So that was a factual issue that was front and center in the Palmer litigation. That was the issue that they refused to defend. And your view is that that needs to be remanded to the district court for the district court to consider whether under the facts, the disputed facts, I gather, that he is covered. I don't think there are any disputed facts here, Your Honor. There was a stipulation and all the facts were admitted. This is summary judgment time. We're revisiting summary judgment that should have been granted in the trial court. Under California law, as a matter of law, there was a duty to defend here the moment that complaint hit St. Paul's eyes. There was a duty to defend both Kraft and Scheer because Scheer was a volunteer worker as a protected person at the tournament. And they breached that duty. They defended Kraft. They defended Kraft and they defended Kraft unconditionally. So they said even if the evidence here is clear that we never gave any specific instructions to Mr. Scheer, if Kraft is found vicariously liable, then we're going to pay the judgment on behalf of Kraft. But we're going to ignore Mr. Scheer. The actual direction interpretation of St. Paul, I submit, is not only unreasonable, but is it directly at odds with several recent decisions of the California Supreme Court that we've cited, and most particularly the TRB decision and the EMMI decision in which courts took small phrases and said you cannot interpret them in isolation. You can't, there's nothing in the words at your direction that says this must be at Kraft's specific direction made to Richard Scheer. It could be at the general direction to the Red Cross to set up a first aid tent. It could be at subject to the direction of Kraft because that's what creates vicarious liability. Under California law, you have to give the policy the broadest interpretation that the language is susceptible to as long as that's consistent with the purposes of the policy, and it is here because the policy was designed to protect EMMI as a protected person, and it's consistent with the facts of the case. We submit as a matter of law under these facts there was a duty to defend him, there was a duty to indemnify him, and that St. Paul's conduct was unreasonable in the process. You cannot deny coverage when the potential is on the face of a complaint. And I'd like to, potential for indemnity, I'd like to reserve a minute if I could for questions. Of course, sure. Thank you very much, Mr. Shapiro. Great. Good morning, Your Honors. Larry Golub for St. Paul Fire and Marine Insurance Company. I'd like to start with one of the cases that Mr. Shapiro threw into his reply brief and mentioned today here because we have not had the chance to respond to that case, which is the Pershing Park Villas case. Pershing Park Villas, according to the Red Cross, Mr. Shapiro, is a case that says once an insurance company that they claim failed to defend, if so facto there's coverage, it can challenge the coverage. That's not what Pershing Park Villas said. Pershing Park Villas, which is a 2000 case, which is partially quoted in the reply papers, actually it's partially quoted and there's a few ellipses in the quotation because there's always ellipses in a quotation, you wonder what was missing. What was missing in the Pershing Park case is the following language. Where the wrongful refusal to defend is also unreasonable. It violates the covenant of good faith and fair dealing and the insurer will be liable for consequential damages regardless of foreseeability. In this case, Judge Phillips, after going through two summary judgment motions, after going through a stipulation proposed by the Red Cross, found that Mr. Scheer was not acting at the direction of craft. If he were, let me just kind of follow up the flip side of what I was asking Mr. Shapiro about. If it were true, we just stipulate that it is true, that he was a volunteer worker acting at the direction of craft and was within the course and scope of his duties, would he be an insured under the policy? He would be an additional insured, or as this policy calls it, a protected person. When you're talking to Mr. Shapiro, the policy is issued to the Ladies Professional Golf Association, the sponsors are named insureds, and then it says you, meaning the named insureds, your employees and volunteer workers are also protected persons or additional insureds if they meet these certain qualifications. So if we were to find that the district judge misunderstood Scheer's role vis-a-vis craft, that he was in fact a volunteer working at their direction through its agent, the Red Cross, and was acting within the scope of his employment, you lose. Well, if you found that Mr. Scheer was a volunteer worker as defined under the policy and then was acting at the direction of craft and within the scope of his duties for craft, and those are two separate requirements, then he would be found to be an additional insured under the policy. Entitled both to defense and indemnity. Entitled to defense, and yes, if he was found to actually be on the indemnification side, we're not talking about the potential. We're talking about actual coverage. Then there would be a duty to indemnify as well. That's not what the judge, of course, found after two motions. Well, I don't understand, why wasn't he basically working for craft when he was at the golf tournament that day? Well, here's what happened. Craft has a tournament, it asks the Red Cross to give some first aid. Red Cross is also there selling pamphlets and whatever else the Red Cross does, first aid kits, whatever. And craft takes, I mean, the Red Cross takes it over and it's the company providing those services. It goes ahead, it contacts its own volunteers, it repeatedly called them, the Red Cross volunteers. It has a supervisor for the volunteers. You're saying craft delegated this to the Red Cross. Why aren't they responsible for what their agents, sub-agents have done? Well, whether craft is ultimately responsible is a liability issue in the underlying case. And that's this vicarious liability that gets mixed into the coverage issues. It's true that craft, craft was sued, St. Paul defended craft. It didn't defend craft because it thought Richard Scheer was its volunteer. It defended craft because craft and the country club possessed the premises. And this was also a premises claim, something happened on the premises. And it was in that context that the claims were being dealt with against craft. Eight months after the lawsuits filed, 17 months after the accident, the Red Cross tenders the defense to St. Paul. Red Cross had been defending craft, defending Scheer from day one. It had a policy, a fronting policy, a $5 million policy that the Red Cross basically self-insured it. So it was defending Mr. Scheer from day one. And what happened is that then as soon as the Red Cross saw, aha, there's this policy here, the whole coverage issue kind of changed. And now they're claiming that Scheer was the volunteer of the Red Cross. That's not what was happening in the case. If you take the Red Cross out of it, let's suppose craft put an ad in the paper and say we're looking for volunteers and Mr. Scheer shows up, what's the result? If craft had done it and craft had asked Mr. Scheer to come and craft and it could be determined that Scheer was acting at the direction of craft as the policy requires at the time of the accident and under his employees, well, craft would have coverage and Scheer would qualify as an additional insured under the policy. And why can't we take that one step further and say, well, craft, you know, you don't have to have the CEO of craft himself doing this. They've arranged to have another entity help them recruit these people. Because then you would be reading out of the policy the explicit requirement that not all volunteers are covered. The Red Cross's policy, it said we cover volunteers. That's all it said. Craft's policy, St. Paul's policy said we cover volunteer workers if and only for activities when they're working at the direction of craft and within the course and scope of their duties for craft. He's not smoking marijuana behind the caddy shack. He's doing his thing as a volunteer there. The Red Cross, craft does have its own volunteers. There's marshals and other people that work at these golf tournaments that craft retains. Craft didn't obtain these people. The Red Cross obtained them. And the parties actually stipulated, Mr. Shapiro started saying it here, I mean, we stipulated, fought a joint stipulation, at no time prior to the accident did Scheer speak to, receive directions or any training from any employee of craft or any volunteer at the tournament not solicited by the Red Cross. Nor did craft ever convey to the Red Cross any directions earmarked for craft. But going to this same joint stipulation, if I understood you correctly before, you indicated that the volunteers, the Red Cross volunteers who had provided, the names of which had been provided to craft, were covered, right? No. They were not covered. I thought you said they were. The Red Cross had its own policy and would have covered its own volunteers. Mr. Scheer was actually covered here. Don't believe that Mr. Scheer was out, you know, on his own. Okay, I misunderstood what you said. I thought you said that craft had, in effect, delegated the selection of the volunteers to the Red Cross. It had done so, and that those volunteers were covered, at least the ones who were named in the list that were provided to craft. I didn't say, I think Judge Stillman said usually delegated, but I didn't say craft delegated to the Red Cross. Craft contracted with the Red Cross, as it had done in past years, to provide first aid services at the facility. That's all craft did. And the Red Cross then went ahead and contacted various volunteers. And were those volunteers covered by St. Paul's policy? Were any of those volunteers? Any of them. I think it depends on whether they could qualify as an insured under the same policy. Okay, now, let's take an example. Let's say the marshals, for example. The marshals are different, because the marshals... Okay, well, let's get some of the Red Cross. You've got the one that's operating the first aid station right there. Are they covered? I don't think they're covered unless they're operating at the direction of craft. Okay, let's say craft said, we want you to operate a first aid station there. Are they covered? Craft says to Red Cross, we want you to operate a first aid station there. Are they covered under your policy? I don't think so. Unless, first of all, craft is not covered under the policy. I mean, sorry, the Red Cross is not even covered. And in fact, had this thing worked out the way it should have been, the Red Cross should have provided a certificate to craft under Red Cross's policy. So craft would have been covered under the Red Cross policy. That's the way it was intended. Well, then who is a protected person? And I have misunderstood then what you previously said. I thought you said, in answer to Judge Silverman's question, that Scheer would be a protected person if he was a volunteer working at the direction of craft through his agent, the Red Cross. Did you not say that? I did not say that. No, we all heard the same thing. I heard that too. Craft? We're misunderstanding that. I clearly understood you to say that. And it sounds like Judge Rawlinson heard the same thing. But be that as it may, you're now saying that we've misunderstood. Well, why don't you read it again and let me make sure I understand. What I understood you to say was that Mr. Scheer would be a, in quotes, protected person if he was a volunteer working at the direction of craft through his agent, the Red Cross. Well, that assumes the answer. You're correct. That assumes if he was working at the direction of craft. I don't know that because... Well, he was working for craft at the direction of his agent, the Red Cross. That's the key point here, right? There's two problems with that phrase. First of all, the Red Cross, which is the link between Scheer and St. Paul, Scheer and Craft, was not insured. There's no question. They have not disputed that. The Red Cross was not insured. It wasn't given a certificate. It's not a person. It's not protected under the policy. Okay. Well, let's skip over to the joint statement then. According to the joint stipulation of undisputed facts, looking at paragraph three, it appears that craft, I wouldn't have asked for it, but the Red Cross sent them a list of volunteers who had agreed to work for them. I assume they asked them to do that so they would know who was working for them. Scheer wasn't on the list. But according to four, Red Cross later invited Scheer to work at the tournament. He'd apparently done it before. Craft wasn't advised. But the fact of the matter is that Mr. Scheer was working the tournament. The only reason he wasn't listed in the letter is apparently he wasn't asked before or he would change his mind or something. The fact is he was doing the same thing he would have done if he had been listed on the letter that was sent. So are the people who are listed on the letter, other than Mr. Craft, who wasn't there initially, are they protected persons? If they're working at the direction of Craft. I don't think it really matters whether Mr. Scheer was on the list or not. It just so happens that he wasn't on the list, someone was sick, four days into it he came there. So I'm not putting a lot of... But back to the question. Craft apparently got, I assume at its request, a list of the volunteers. Presumably that was so they would know who the volunteers were. Are they not then protected persons under your policy? No, actually the reason they probably got the list of volunteers and an S, M or L next to the name was so that Craft could give them a T-shirt or a sweat jacket or something. So that they would give them a jacket if they wanted to wear it. It's kind of like my Red Cross went to London and got an indemnity and all I got was this lousy T-shirt. But it's exactly right. Actually a lousy windbreaker or whatever. But the question is here, like I said, Craft did have its own volunteers. It got those people, it said here's your duties, it directed them, it gave them responsibilities. Those are Craft's own volunteers. There's no coverage under this policy for people working at the tournament. The Red Cross's brief keeps using this working at the tournament and this elevates someone to an insured. We have a policy that has specific provisions that only certain people are insured or protected persons or additional insureds under that policy. If we were to find that Scheer was a protected person but that the Red Cross was not, where does that leave us? If Scheer, I'm sorry, can you repeat that again? If Scheer is a protected person because he's a volunteer effectively working for Craft, where does that leave the Red Cross? Well, the Red Cross is not seeking coverage here. Well, they're a plaintiff on the action. Yeah, they're a plaintiff and they sued for breach of contract and they claimed in bad faith and they claimed that they were insured but when they got down to filing their motions, they dropped that claim. So the Red Cross is out of it as far as you're concerned? They have no contractual right. They have no contract. They have no bad faith claim. They have really not disputed that they have no claim under this policy. They're trying to come in now as an equitable subrogate or something, but frankly, that wasn't argued in the motions. It's not part of their complaint. And the other thing that's important to recognize, Mr. Scheer has no damages here. Mr. Scheer was fully defended, fully indemnified, fully protected from the day he ran over Ms. Palmer by the Red Cross and its insurance policy or its fronting policy. That's a different defense, though, isn't it? It's a different defense, but it's an issue that raises, for example, in the bad faith issue. If you don't have damages, you don't have a claim for bad faith. You have to have a claim for damages to have a fronting policy. I mean, we're not here to argue about whether he had damages or whether his statute of limitations ran or, you know. No, no. He doesn't have damages as against St. Paul because he was fully covered and protected by the Red Cross. A party has to come into court not only having someone breach a duty, for example, but also having damages. Thank you very much, Mr. Goldman. You're done. Thanks. You're out of time. Thank you very much. We'll hear from Mr. Shapiro and then we'll submit the case. Excuse me. How much time does Mr. Shapiro have left, Lucy? Okay. We'll round it up to a full minute. How's that? The kind of magnanimous people we are. The Red Cross is entitled to get reimbursed for those sums. Is that an equitable assignment or was there an actual assignment? Third, the list. The list was there because Kraft not only wanted to know who was there, they were providing meals to the volunteers, they provided tournament jackets bearing Kraft's name to the volunteers, they provided the golf carts that were used, they provided the golf cart that was used by Mr. Shapiro on the day of the accident. These were their volunteer workers. You're right, it's a subagency issue. That's what was going on here. Thank you very much. Subagency issue.
judges: Silverman, Rawlinson, Smith